UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| SANDRA J. ANGULO | : | |
| Debtor | : | Bankruptcy No. 09-14944 |

_____

| | | |
|---|---|---|
| SANDRA J. ANGULO | : | |
| Plaintiff | : | |
| v. | : | |
| EMIGRANT MORTGAGE COMPANY and RETAINED REALTY, INC. | : | |
| Defendant | : | Adversary No. 09-0389 |

_____

..................................................

MEMORANDUM

..................................................

Before me is the defendants' joint motion to dismiss the above-captioned

adversary proceeding filed against them by the debtor/plaintiff.  The plaintiff, Ms. Sandra

Angulo, sets out six counts in connection with a note and mortgage originated by

Emigrant Mortgage Company.  After Emigrant obtained a foreclosure judgment, it

assigned that judgment to the use of Retained Realty, Inc., identified as its subsidiary.

Prior to a scheduled foreclosure sale of the debtor's real property, the debtor filed this

chapter 13 bankruptcy case.

Thereafter, the debtor filed a "complaint objecting to the proof of claim of

Emigrant Mortgage Company, claim #1, which has been replaced by proof of claim of

Retained Realty, claim #10. . . ."  In addition, the debtor's complaint purportedly seeks a

determination of the extent and validity of the lien held by Retained Realty, as well as

damages and "equitable relief."  See generally Fed. R. Bankr. P. 7001; Fed. R. Bankr. P.

3007(b) (an objection to a proof of claim may be included in an adversary proceeding).

The defendants now contend that the debtor has failed to state any cause of

action in her complaint.  The debtor disagrees.

I.

The defendants seek to dismiss the instant complaint under Fed. R. Bankr.

P. 7012, which procedural rule incorporates, inter alia, Fed. R. Civ. P. 12(b)(6).  Recently,

the Supreme Court explained the standard for determining whether a complaint states a

cause of action, thus entitling the plaintiff to proceed to discovery and possibly to trial.

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face."  [Bell Atlantic Corp. v.
> Twombly, 550 U.S. 544,  570, 127 S. Ct. 1955 (2007)].  A
> claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  Id., at
> 556, 127 S. Ct. 1955.  The plausibility standard is not akin to
> a "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.  Ibid.
> Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"
> Id., at 557, 127 S. Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in Twombly.
> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal
> conclusions.  Threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not
> suffice.  Id., at 555, 127 S. Ct. 1955 (Although for the
> purposes of a motion to dismiss we must take all of the factual

allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Id., at 556, 127 S. Ct. 1955.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  [Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007.]  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

Therefore, I shall accept the debtors' factual allegations as true, as well as all reasonable inferences that may be drawn from those allegations.  If, nonetheless, this complaint fails to meet the pleading standard set forth in Iqbal, dismissal is warranted, see, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); In re Joubert, 411 F.3d 452 (3d Cir. 2005); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988), unless leave to amend is appropriate.  See, e.g., Jones v. Domalakes, 161 Fed. Appx. 216, 217 (3d Cir. 2006) (non-precedential); Chemtech Intern., Inc. v. Chemical Injection Technologies, Inc., 170 Fed. Appx. 805, 811 (3d Cir. 2006) ("[I]n this circuit, '[w]hen a plaintiff does

not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the

court must inform the plaintiff that he has leave to amend within a set period of time,

unless amendment would be inequitable or futile.'") (quoting Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002)); Griffin-El v. Beard, 2009 WL 1229599, at *6

(E.D. Pa. 2009).  Where, however, repleading could not correct the defects in a party's

claim, a court need not grant leave to amend.  See e.g., Alston v. Parker, 363 F.3d 229,

235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to

amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a

curative amendment, unless an amendment would be inequitable or futile."); Peterson v.

Philadelphia Stock Exchange, 717 F. Supp. 332, 337 (E.D. Pa. 1989); see also Massarsky

v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983); Sarfaty v. Nowak, 369 F.2d

256, 259 (7th Cir. 1966) ("Rule 15(a) does not require a court to do a futile thing.").

I further note that under Fed. R. Civ. P. 12(d) (also incorporated by Fed. R.

Bankr. P. 7012):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside
> the pleadings are presented to and not excluded by the court,
> the motion must be treated as one for summary judgment
> under Rule 56.  All parties must be given a reasonable
> opportunity to present all the material that is pertinent to the
> motion.

II.

The following relevant allegations are included in the debtor's complaint, or

are contained in exhibits that may be considered in the context of a motion to dismiss.

The plaintiff is the owner of the residential property located at 5711 Anderson Street, Philadelphia, Pennsylvania.  Complaint, ¶ 18.  She inherited the property upon the death of her mother in July 2002.  Id., ¶ 19.

On May 25, 2005, Ms. Angulo and Emigrant executed a note and mortgage (both with riders), in the amount of $56,925.00.  Id., ¶ 23; see also ex. C (Adjustable Rate Note and Mortgage).  On June 30, 2008, Emigrant obtained a judgment in mortgage foreclosure for $69,056.33, which included a per diem charge of $16.71 through October 7, 2008.  Complaint, ¶ 34.[1]

---

[1]The plaintiff here cites to exhibit E to her complaint as support for this allegation. However, the plaintiff's complaint attaches exhibits A-D and J only.  (Exhibits C and D are attached twice.)  Though the plaintiff later attached some of the missing referenced exhibits to her response to the defendants' motion to dismiss, she did not attach the June 30, 2008 foreclosure judgment.  (As the defendants did not complain about missing exhibits, I assume that only the copy electronically-filed with this court lacks all of the exhibits.)

The defendants included in their exhibits a June 10, 2008 order of the Common Pleas court granting Emigrant's motion for summary judgment in foreclosure.  That order grants judgment to Emigrant in the lesser amount of $63,416.36 plus interest after April 1, 2008 at a daily rate of $16.75.  See Exhibit E to Motion to Dismiss.

Such a document, relied upon by the plaintiff in her complaint, may be considered for purposes of a motion to dismiss without converting the motion to one under summary judgment.  See Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002):

> "[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. . . .  Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court."

(quoting 62 Fed. Proc., L. Ed. § 62:508).  See also Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994):

> We previously left open whether a court may properly consider a concededly authentic document upon which the complaint is based

(continued...)

"On November 6, 2008, the parties attended a conciliation conference before a judge pro tem ('JPT'), as provided for under the Mortgage Foreclosure Diversion program, pursuant to Joint General Court Regulation No. 2008-001 of the Philadelphia Court of Common Pleas."  Complaint,  ¶ 35.  "Emigrant represented to the JPT that the outstanding principal at that time was $71,264.54, and the JPT recommended a loan modification be crafted with an outstanding principal of $68,264.54, in consideration of Ms. Angulo tendering a $3,000 payment to Emigrant."  Id., ¶ 37.[2]  This recommendation was conditioned upon a future appraisal demonstrating a loan to value ratio of 70%.  A

---

[1](...continued)
when the defendant attaches such a document to its motion to dismiss.  We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.  Our decision will not undermine the rationale underlying Rule 12(b)(6)'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings.  The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.  When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

(citations omitted); accord In re Rockefeller Center Properties, Inc. Securitites Litigation, 184 F.3d 280, 287 (3d Cir. 1999); In re Beck, 272 B.R. 112, 114 n.1 (Bankr. E.D. Pa. 2002).

[2]Although the debtors' complaint makes use of the term "principal" in her allegations, as will be mentioned below, it may be more accurate to refer to the amount alleged as the payoff figure.

6

further conciliation conference was scheduled to give Emigrant an opportunity to

consider this recommendation.  Debtor's Reply to Motion to Dismiss, ex. B.[3]

On December 11, 2008, the additional conciliation conference was held.

The debtor alleges that the state court thereafter entered an order that the parties had

reached an agreement upon the terms outlined in the JPT's recommendation of November

6, 2008.  Complaint, ¶ 38.  The December 11th order, referred to in the complaint as

exhibit F but only attached as exhibit C to the debtor's response to the defendants'

motion, reads as follows:

> An agreement was reached.  Sheriff Sale is postponed to
> 2/13/09 to enable the parties to finalize the Agreement.  If no
> Agreement is reached by the above date, the Sheriff shall sell
> the premises unless otherwise ordered by the Court or by the
> Plaintiff.

On December 16, 2008, Emigrant acknowledged that it had received the

$3,000 that Ms. Angulo "tendered to Emigrant in good faith consideration for an

affordable loan modification."  Complaint, ¶ 39.[4]

The debtor's complaint does not address the February 13, 2009 deadline

mentioned in the December 11, 2008 state court order.  She next asserts that "[i]n April

2009, rather than carrying out the terms agreed upon by the parties in December 2008,

---

[3]The plaintiff's complaint references Exhibit F as a copy of the state court order, but, as explained in footnote 1, that exhibit was not attached to the complaint.  The November 6, 2008 JPT sheet recommending the terms of the loan modification, and containing a November 8th order signed by state court Judge Rizzo postponing the scheduled foreclosure sale, is attached to the plaintiff's response to the defendants' motion to dismiss at Exhibit B.

[4]The plaintiff here references Exhibit G, but as explained in footnote 1, that exhibit was not attached to the complaint.  A copy of Emigrant's December 16, 2008 acknowledgment of the plaintiff's payment of $3,000 is attached to the plaintiff's response to the defendants' motion to dismiss at Exhibit D.

and affirmed by the state court, Emigrant proposed a different loan modification with

onerous terms." Id., ¶ 40.[5]  In the loan modification proposed by Emigrant, the

outstanding indebtedness was purported to be $81,487.47.[6]  Id., ¶ 42.  Ms. Angulo also

complains that Emigrant failed to account for the $3,000 payment she made, id., ¶ 43, and

that the outstanding debt demanded by Emigrant was "far in excess of the amount that

could be calculated from the re-assessed damages authorized by the state court in the

foreclosure judgment in June 2008." Id., ¶ 44.  Indeed, the debtor alleges that "[a]fter the

$3,000 payment, the judgment held by Emigrant could total no more than $67,142.48."

Id., ¶ 45.

Although not alleged in the complaint, one can reasonably infer that the

debtor failed to sign Emigrant's proposed loan modification.  Indeed, exhibit F is

unsigned.  Thus, Emigrant resumed the foreclosure process based upon its earlier

judgment.  On May 1, 2009, Emigrant assigned the judgment to Retained Realty. Id., ¶

47.[7]

In June 2009, Ms. Angulo petitioned the state court to strike the earlier

foreclosure judgment entered against her.  Complaint, ¶ 53.  On July 5, 2009, while her

petition to strike was under consideration, she petitioned the state court to postpone the

_____

[5]The plaintiff here references Exhibit H, but as explained in footnote 1, that
exhibit was not attached to the complaint.  Emigrant's proposed loan modification is attached to
the plaintiff's response to the defendants' motion to dismiss at Exhibit F.

[6]Exhibit F, at 2, states Emigrant's proposals for the outstanding existing total
indebtedness.  The debtor incorrectly asserts in paragraph 42 of her complaint that the total
indebtedness amount is the outstanding principal amount.

[7]The plaintiff here references Exhibit I, but as explained in footnote 1, that exhibit
was not attached to the complaint.  The loan modification is attached to the plaintiff's response to
the defendants' motion to dismiss at Exhibit G.

scheduled Sheriff's sale of her property.  Id., ¶ 54.  She filed the instant bankruptcy

petition one day later, on July 6, 2009.  Id., ¶ 55.

The debtor alleges that she notified the defendants of her July 6th

bankruptcy filing.  She asserts: "Fully aware of the bankruptcy, Emigrant, acting as a debt

collector for Retained Realty and as Retained Realty's agent, proceeded on July 7, 2009

to petition the state court to further postpone the Sheriff's sale date, in violation of 11

U.S.C. §§ [i]n violation of 11 U.S.C. §§ 362(a)(1)-(6)," Id., ¶ 56.  And, "[i]n violation of 11 U.S.C. §§ 362(a)(1)-(6),

on July 14, 2009, Emigrant filed a response to Ms. Angulo's petition to strike the

judgment with the Court of Common Pleas."  Id., ¶ 57.

After Ms. Angulo filed bankruptcy petition, Emigrant filed a secured proof

of claim, docketed on the claims register as claim #1, and dated July 14, 2009.  In that

claim, Emigrant asserts that it is owed $85,199.83 in loan payoff amount and $14,051.30

in prepetition mortgage arrearages.  See generally Local Bankr. R. 3001-1(b) (proofs of

claim filed by secured creditors holding claims that mature after the last date of the

proposed plan should include both prepetition arrearages and payoff figures).[8]

The debtor then filed a proof of claim on behalf of Retained Realty, Inc.,

docketed as claim #9 and dated November 13, 2009.  See generally Fed. R. Bankr. P.

3004.  In her claim, the debtor asserts that Retained Realty holds a secured claim in the

amount of $70,066.73, with prepetition mortgage arrears not to exceed $13,848.06.

---

[8]I may take judicial notice under Fed.R.Evid. 201 (incorporated into bankruptcy
cases by Bankr.R. 9017) of the filing of proofs of claim on the docket, albeit not for the truth of
the assertions contained therein unless otherwise admissible.  See, e.g., In re Jordan, 403 B.R.
339, 351 n. 13 (Bankr. W.D. Pa. 2009); In re Patterson, 2007 WL 987306, at *2 n.6 (Bankr. E.D.
Pa. 2007); Russell, Bankruptcy Evidence Manual, § 201.5 at 59 (2010); see generally In re Indian
Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

Debtor's Proof of Claim, ¶¶ 8, 13.  Attached to the debtor's proof of claim are copies of

the state court judgment in favor of Emigrant, the assignment of that judgment to

Retained Realty, a description of the realty and an assignment of the mortgage to

Retained Realty.

Retained Realty responded to the debtor's proof of claim on its behalf by

filing its own proof of claim, docketed as claim #10, and dated November 16, 2009.  This

filing states that it is to replace Emigrant's July 14th claim and is otherwise identical to

proof of claim #1.  Retained Realty then amended its November 16th proof of claim by

one dated January 26, 2010 (after the commencement of this adversary proceeding).  See

Complaint, ex. A.  Amended Claim #10 asserts that same payoff amount, $85,199.83, and

the same arrearage amount, $14,051.30, that had been previously claimed, but now

attached copies of the original 2005 mortgage, note and other loan documents, plus a real

property description and an assignment of the mortgage.[9]  The following itemization of

the payoff amount is also attached to the proof of claim:

|  |  |
|---|---|
| Principal | $56,218.67 |
| Interest due as of 7/6/09 | 9,825.47 |
| Late fees, costs, taxes and insurance | 3,620.66 |
| Attorney fees and costs | 14,929.86 |
| TOTAL | $85,199.83 |

---

[9]Ms. Angulo originally alleged that Retained Realty did not file any supporting
documents with its proof of claim, in particular, nothing to evidence that it held the claim or how
the claim is secured by real estate.  See Complaint, ¶¶ 51-52, 67.  These allegations formed the
basis for her Count V.  However, Retained Realty subsequently amended its proof of claim to
include supporting documentation, and therefore Ms. Angulo orally withdrew Count V of her
complaint.

10

III.


A.


In Count I of her complaint, the debtor asserts that Emigrant, as agent for Retained Realty, violated the bankruptcy stay found in section 362(a) in two instances: first, by obtaining a postponement of the foreclosure sale scheduled for July 7, 2009 until August 4, 2009; second, by responding to the debtor's motion to strike the foreclosure judgment. The debtor demands that the defendants be held in contempt and that she be awarded compensatory and punitive damages.

The defendants respond that the automatic stay is not violated when a creditor requests a postpetition postponement of a previously scheduled foreclosure sale, so long as the sale itself does not take place prior to the bankruptcy stay being terminated. In Taylor v. Slick, 178 F.3d 698 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000), the Third Circuit held:

> This court has not previously addressed whether the postponement or continuation of a sheriff's sale violates the automatic stay provisions of 11 U.S.C. § 362(a). We are persuaded by a consistent line of cases from other courts, however, and hold that the continuance of a sheriff's sale in accordance with state law procedure during the pendency of an automatic stay does not violate § 362(a)(1).

Id., at 701. As the postponement of the sale maintains the status quo that existed at the time of filing of the bankruptcy petition, the purpose of the bankruptcy stay is met:

> The "continuation" of a sheriff's sale, on the other hand, connotes the postponement of a proceeding, and effectuates the purposes of § 362(a)(1) by preserving the status quo until the bankruptcy process is completed or until the creditor

11

> obtains relief from the automatic stay. . . . A postponement
> notice does not, by itself, permit the rescheduled sheriff's sale
> to occur. So long as the bankruptcy petition is pending before
> the bankruptcy court, a creditor must apply for and obtain
> relief from the stay before it can proceed with the sale on the
> date certain.

Id., at 702; see also In re Townsville, 268 B.R. 95, 125 (Bankr. E.D. Pa. 2001) ("Under

the holding in Taylor, the continuation of the Sheriff's Sale and oral notice of the new

date did not violate the automatic stay because it merely preserved the status quo.").

Thus, the debtor fails to state a cause of action in Count I on this issue.[10]

As to the second complained-of action—the postpetition filing of a

response to the debtor's prepetition motion—the defendants assert that this response to

the debtor's state court motion to strike the foreclosure judgment "was filed at the

direction of the Motion Court clerk," and that the response noted the debtor's bankruptcy

filing and requested that the motion be held in "abeyance." Defendants' Motion to

Dismiss, ¶ 27.

These two factual assertions made by the defendants are outside the scope

of the debtor's complaint, and thus cannot be considered in the context of a Rule 12(b)(6)

dismissal motion. Accordingly, this portion of Count I will not be dismissed.

---

[10]The debtor attempts unpersuasively to distinguish Taylor v. Slick by arguing that the defendants here obtained the postponed sale date via motion and also "extended the writ of execution." Plaintiff's Reply, ¶ 26. The relevant consideration is whether the status quo was maintained and the debtor does not allege that it changed.

Furthermore, in her complaint the debtor avers that on July 5, 2009, just prior to her bankruptcy filing, she requested that the state court postpone the scheduled sale. Complaint, ¶ 54. Thus, the defendants' similar request—albeit made immediately after she filed her bankruptcy petition—would not cause her any damages.

B.

In Count II, the debtor asserts that Emigrant violated the Truth in Lending Act by overstating the amount financed and understating the finance charge.  The debtor seeks statutory damages of $4,000, actual damages, attorney's fees and any other appropriate relief.

The defendants seek dismissal asserting that such Truth in Lending claim is barred by res judicata, owing to the judgment entered by the state court in mortgage foreclosure.  They also contend that this claim contradicts Count VI, wherein the debtor objects to the proof of claim filed by Retained Realty as not consistent with the foreclosure judgment.

The defendants' assertion that Count II and Count VI are inconsistent would, even if correct, not be a basis to dismiss Count II under Rule 12(b)(6).  Federal Rule of Bankruptcy Procedure 7008, which incorporates Fed. R. Civ. P. 8(a)(3) and (d)(2), expressly permits complaints to demand alternative claims and relief.  While the debtor may not be entitled to receive contradictory relief, such a contradiction does not fail to state a claim.  See Robinson v. Holiday Universal, Inc., 2006 WL 2642323, at *8 (E.D. Pa. 2006) (Although "for the time-being Plaintiffs may maintain their actions for unjust enrichment and breach of contract, they may not recover under both theories, even if they ultimately prevail in their proofs.").

Insofar as res judicata is concerned, federal courts must apply the preclusion principles developed by the state that issued the allegedly preclusive judgment.  Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988); see Richard Johnson Honey Shoe Shine

13

Express Services v. U.S. Equity Realty, Inc., 125 F. Supp. 2d 695, 699 (E.D. Pa. 2000)

(same); In re Marks, 192 B.R. 379, 383 (E.D. Pa. 1996) (same).  This derives from the

Full Faith and Credit statute, 28 U.S.C. § 1738, requiring a federal court to give the same

effect to a judgment that the issuing state would.  Gregory v. Chehi, 843 F.2d at 116

(citing Davis v. United States Steel Supply, 688 F.2d 166, 170 (3d Cir. 1982)); In re

Marks, 192 B.R. 379, 384 (3d Cir. 1996).

      In Pennsylvania "res judicata, also known as claim preclusion, provides that

where there is a final judgment on the merits, future litigation between the parties on the

same cause of action is prohibited."  McGill v. Southwark Realty Co., 828 A.2d 430, 435

(Pa. Commw. Ct. 2003).  State courts define the elements of claim preclusion in these

terms:

> Invocation of the doctrine of res judicata (claim preclusion)
> requires that both the former and latter suits possess the
> following common elements:
>
>     1. identity in the thing sued upon;
>     2. identity in the cause of action;
>     3. identity of persons and parties to the action;
>     and
>     4. identity of the capacity of the parties suing or
>     being sued.

Gatling v. Eaton Corp., 807 A.2d 283, 287 (Pa. Super. 2002); see also Wexler v. Citibank,

1994 WL 580191, at *5 (E.D. Pa. 1994).

      In Pennsylvania, the invocation of res judicata "applies not only to claims

actually litigated, but also to claims which could have been litigated during the first

proceeding if they were part of the same cause of action."  R/S Financial Corp. v.

Kovalchick, 552 Pa. 584, 588 (1998); see, e.g., Balent v. City of Wilkes-Barre, 542 Pa.

555, 564 (1995).  Conversely, claim preclusion is not applied to claims that could not

14

have been previously litigated.  See generally Dithridge House Ass'n v. Com., Dept. of

Environmental Resources, 116 Pa. Cmwlth. 24, 32 (1988).

      The Pennsylvania Superior Court has held that a mortgagor cannot raise

federal Truth in Lending violations seeking damages under 15 U.S.C. § 1640, as a setoff,

recoupment or counterclaim, to a mortgage foreclosure action.  See Fleet Real Estate

Funding Corp. v. Smith, 366 Pa. Super. 116, 125-27 (1987); New York Guardian

Mortgage Corp. v. Dietzel, 362 Pa. Super. 426 (1987).  The state appellate court has

explained its holding thusly:

> An action in mortgage foreclosure is strictly an in rem
> proceeding, and the purpose of a judgment in mortgage
> foreclosure is solely to effect a judicial sale of the mortgaged
> property. . . .  A judgment in a mortgage foreclosure action is
> not a judgment for money damages and therefore cannot be
> "an action to collect amounts owed" or "an action to collect
> the debt" as required under § 1640(h) and (e) of the
> Truth-In-Lending Act.  Therefore, a set-off for an alleged
> violation of the Truth-In-Lending Act cannot be asserted as a
> counter-claim in a mortgage foreclosure action.

New York Guardian Mortgage Corp. v. Dietzel, 362 Pa. Super. at 431.

      Thereafter, state trial courts have declined to consider TILA disclosure

damage claims as either defenses or counterclaims in foreclosure actions.  See, e.g.,

Federal Home Loan Mortgage Corp. v. Pearl, 28 Phila. Co. Rptr. 522 (Pa. C.P., Phila. Co.

1994); Fairway Consumer Discount Co. v. Mulhern, 7 Pa. D. & C. 4th 405, 407 (Pa. C.P.,

Luz. Co. 1990):

> As set forth above, defendants' defense of this claim does not
> attack the existence of the mortgage or that they are in default,
> but rather only challenges the mortgage lender's failure to
> disclose as required by the federal Truth in Lending Act, 15
> U.S.C. §1601 et seq.

Thus, the debtor's claim under the federal Truth in Lending Act for damages and/or recoupment in Count II is not precluded, as it could not have been litigated in the prior state court lawsuit.  See In re Blythe, 413 B.R. 205, 209-10 (Bankr. E.D. Pa. 2009); In re Faust, 2006 WL 2801946, at *4-*5; In re Soto, 221 B.R. 343, 356 (Bankr. E.D. Pa. 1998); In re Jones, 122 B.R. 246, 251 n.4  (W.D. Pa. 1990) ("Jones' TILA claim is not barred by res judicata because state law prohibits assertion of such a claim as a defense to a foreclosure action.").

Although not mentioned in their motion to dismiss, at oral argument the defendants also asserted that any Truth in Lending claim against them would be barred by the statute of limitations.[11]

---

[11]A federal court in this circuit may consider the affirmative defense of the statute of limitations in connection with a motion to dismiss if the limitations defense is clear from the complaint itself.  As explained by the Third Circuit Court of Appeals:

> Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer.  Rule 12(b) states that "[e]very defense . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. . . ."  The defenses listed in Rule 12(b) do not include limitations defenses.  Thus, a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion.  However, the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975).  "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (footnote omitted); see, e.g., In re Coastal Group, Inc., 13 F.3d 81, 83 (3d Cir. 1994) (limitations issue raised and considered by a motion to

(continued...)

16

In general, damage claims under TILA are governed by the one-year limitations period found in section 1640(e).  This subsection states:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.  This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

The one-year limitations period in section 1640(e) commenced when the debtor's loan closed in 2005.  Clearly, the one-year limitations period expired prior to her commencement of this adversary proceeding on December 21, 2009 and prior to her commencement of this bankruptcy case on July 6, 2009.

However, even if the limitations period has expired for affirmative damages recovery, section 1640 allows an action in recoupment after one year, e.g., to offset a creditor's proof of claim.  See, e.g., In re Community Bank of Northern Virginia, 418 F.3d 277, 305 (3d Cir. 2005) ("No statute of limitations applies to a borrower asserting a violation of TILA or HOEPA as a defense (by recoupment or set-off) in a foreclosure action.); In re Norris, 138 B.R. 467, 470-71 (E.D. Pa. 1992); In re Roberson, 262 B.R. 312, 322 (Bankr. E.D. Pa. 2001).  Therefore, if the debtor can prove Truth in Lending

---

[11](...continued)
dismiss under Fed. R. Bankr. P. 7012(b)); 2 Moore's Federal Practice, ¶ 12.34[4][b] at 12-74 (3d ed. 2006) ("Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense or other bar to relief appears on the face of the complaint, such as . . . the statute of limitations.") (footnote omitted).

violations, an issue not now before me, she may be able to obtain relief under Count II by reducing the allowed proof of claim of Retained Realty.

Accordingly, Count II will not be dismissed at this time.[12]


## C.


In Count III, the debtor asserts that both defendants violated the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et seq. Emigrant allegedly violated this federal statute by filing a proof of claim after it had transferred its interest in the foreclosure judgment to Retained Realty. The debtor maintains that Retained Realty violated the FDCPA by filing a proof of claim in an amount greater than is actually owed.

In moving to dismiss Count III, Emigrant contends that its proof of claim was filed "inadvertently" and has since been withdrawn and replaced by one filed by Retained Realty. Motion to Dismiss, ¶ 38. At oral argument, the debtor's counsel agreed that Emigrant's withdrawal of its proof of claim disposes of her claim against that defendant. For the following reasons, I also agree that no cause of action under the FDCPA has been stated against Retained Realty.

The FDCPA "regulates the practices used to collect a debt." Adair v. Sherman, 230 F.3d 890, 895 (7th Cir. 2000). The statute "makes it unlawful for debt collectors to use 'any false, deceptive, or misleading representation or means in

---

[12]I appreciate that, at oral argument, debtor's counsel may have agreed to limit Count II to defendant Emigrant. If so, and if defendant Retained Realty is the only entity with a claim, recoupment may not be possible. However, it is unclear to me whether this concession included recoupment as well as affirmative damages. I will at present give the debtor the benefit of the doubt on this point.

connection with the collection of any debt.'" <u>Freyermuth v. Credit Bureau Services, Inc.</u>,

248 F.3d 767, 770 (8th Cir. 2001) (quoting 15 U.S.C. § 1692e).

Section 1692f of the FDCPA provides that, "[a] debt collector may not use

unfair or unconscionable means to collect or attempt to collect any debt." Such improper

conduct includes "[t]he collection of any amount (including any interest, fee, charge, or

expense incidental to the principal obligation) unless such amount is expressly authorized

by the agreement creating the debt or permitted by law." <u>Id.</u> However, the FDCPA does

not apply to a creditor acting to collect its own debt. <u>See</u> 15 U.S.C.§ 1692a(6).

> The FDCPA's provisions generally apply only to "debt
> collectors." <u>Pettit v. Retrieval Masters Creditors Bureau, Inc.</u>,
> 211 F.3d 1057, 1059 (7th Cir.2000). Creditors—as opposed to
> "debt collectors"—generally are not subject to the FDCPA.
> <u>See</u> <u>Aubert v. American Gen. Fin., Inc.</u>, 137 F.3d 976, 978
> (7th Cir.1998) ("Creditors who collect in their own name and
> whose principal business is not debt collection . . . are not
> subject to the Act. . . .  Because creditors are generally
> presumed to restrain their abusive collection practices out of a
> desire to protect their corporate goodwill, their debt collection
> activities are not subject to the Act unless they collect under a
> name other than their own."); <u>Staub</u>, 626 F.2d at 277 ("The
> [FDCPA] does not apply to persons or businesses collecting
> debts on their own behalf."); Hon. D. Duff McKee, <u>Liability
> of Debt Collector to Debtor under the Federal Fair Debt
> Collection Practices Act</u>, 41 Am. Jur. Proof of Facts 3d 159,
> at § 3 (1997) [hereinafter McKee] ("[I]nterestingly, the term
> 'debt collector' does not include the creditor collecting its
> own debt.").

<u>Pollice v. National Tax Funding, L.P.</u>, 225 F.3d 379, 403 (3d Cir. 2000).  Thus, because

the debtor contends that Retained Realty is the actual creditor, its actions taken in this

court to collect its own debt fall outside the scope of the FDCPA.

In addition, numerous courts have held that an FDCPA claim "cannot be

based on the filing of a proof of claim, regardless of the ultimate validity of the

underlying claim." In re Simpson, 2008 WL 4216317, at *3; see, e.g., Simmons v.

Roundup Funding, LLC, 2009 WL 3049586, at *3-*4 (S.D.N.Y. 2009); In re Pariseau,

395 B.R. 492, 493-94 (Bankr. M.D. Fla. 2008); In re Varona, 388 B.R. 705, 717-21

(Bankr. E.D. Va. 2008); In re Abramson, 313 B.R. 195, 198 (Bankr. W.D. Pa. 2004).

   For example, the Ninth Circuit Bankruptcy Appellate Panel explained that

the debt validation procedure of the FDCPA, an important component of the statute, is

incompatible both with the bankruptcy stay imposed by section 362(a) as well as the

procedure for objections to proofs of claim.  In re Chaussee, 399 B.R. 225, 237-39

(B.A.P. 9th Cir. 2008).  Thus, it concluded that the appropriate remedy for creditors who

misuse the proof of claim process is found in provisions such as Bankruptcy Code section

105(a) and Fed. R. Bankr. P. 9011.  Id., at 240-41.

   Recently, a district court observed that "permitting claims under the

FDCPA for conduct otherwise governed by the Bankruptcy Code 'would thwart

Congress' intent in promulgating the Bankruptcy Code to create a single federal system to

adjust all of the rights and duties of both creditors and debtors.'"  Simmons v. Roundup

Funding, LLC, 2009 WL 3049586, at *3 (quoting Diamante v. Solomon & Solomon,

P.C., 2001 WL 1217226, at *3 (N.D.N.Y. 2001)).  Another district court similarly held:

> While the FDCPA's purpose is to protect unsophisticated
> consumers from unscrupulous debt collectors, that purpose is
> not implicated when a debtor is instead protected by the court
> system and its officers.  As a related point, this Court also
> fails to see how the purpose of the Bankruptcy Code and
> Rules, which is to "secure the just, speedy, and inexpensive
> determination of every case and proceeding" is furthered by
> allowing a debtor to proceed with an FDCPA claim against a
> creditor whose only action is to file a proof of claim under the
> procedures set out in the Code.

B-Real, LLC v. Rogers, 405 B.R. 428, 432 (M.D. La. 2009) (footnote omitted); see also

Middlebrooks v. Interstate Credit Control, Inc., 391 B.R. 434, 436-37 (D. Minn. 2008).

Compare Dougherty v. Wells Fargo Home Loans, Inc., 425 F. Supp.2d 599, 604-06

(E.D. Pa. 2006) (collection activities outside the bankruptcy claims allowance process

may violate the FDCPA).

Indeed, because Congress permits any "creditor" to file a proof of claim

under section 501(a) of the Bankruptcy Code, defines a "creditor" as an entity that has a

prepetition claim against the debtor, 11 U.S.C. § 101(10)(A), and then includes a

"disputed" claim within its definition of the term "claim," it is counterintuitive to

maintain that where, as here, the debtor asserts that Retained Realty is owed about

$70,000, while this creditor contends in its proof of claim that it is owed $85,000, the

filing of the disputed proof of claim itself violates a federal non-bankruptcy statute.

Accordingly, Count III must be dismissed.


D.


In Count IV the debtor alleges that she and Emigrant reached an agreement

to modify her mortgage loan on terms recommended at the conciliation conference.

Based upon that contention, the debtor maintains that defendant Emigrant and defendant

Retained Realty, as its successor in interest, breached that contract by failing to propose a

loan modification consistent with the terms of that agreement.  See Complaint, ¶¶ 100-01.

The defendants seek dismissal of this breach of contract claim on two

bases: first, that no enforceable agreement was ever entered into at the conciliation

21

conference; second, that as the debtor unsuccessfully raised this issue in the state court in

connection with her motion to postpone a scheduled sheriff sale, her present claim in this

adversary proceeding is barred by the <u>Rooker-Feldman</u> doctrine.

Although not expressly addressed by the parties, I shall assume that

Pennsylvania law governs whether a contract was entered into by the debtor and Emigrant

in December 2008.

Under state law, "'[a] contract is formed when the parties to it 1) reach a

mutual understanding, 2) exchange consideration, and 3) delineate the terms of their

bargain with sufficient clarity.'" <u>Forest Glen Condominium Ass'n v. Forest Green</u>

<u>Common Ltd. Partnership</u>, 900 A.2d 859, 863-64 (Pa. Super. 2006) (quoting <u>Weavertown</u>

<u>Transport Leasing, Inc. v. Moran</u>, 834 A.2d 1169, 1172 (Pa. Super 2003), <u>appeal denied</u>,

578 Pa. 685 (2004)).  Moreover,

> [i]t is black letter law that in order to form an enforceable
> contract, there must be an offer, acceptance, consideration or
> mutual meeting of the minds. . . .  It is also well-settled that
> "[a]bsent a manifestation of an intent to be bound, however,
> negotiations concerning the terms of a possible future contract
> do not result in an enforceable agreement."  <u>Philmar</u>
> [<u>Mid-Atlantic, Inc. v. York Street Associates II</u>], 566 A.2d
> [1253] at 1255 [1989].

<u>Jenkins v. County of Schuylkill</u>, 441 Pa. Super. 642, 648 (1995).

In asserting that an enforceable agreement was reached to modify the

debtor's mortgage obligation to Emigrant, the debtor relies upon exhibits B and C

attached to her response to defendants' dismissal motion (which exhibits were intended to

be attached to her complaint as exhibit F).  Thus, I can consider whether those exhibits

established a binding agreement:

22

> In considering whether a complaint should have been
> dismissed for failure to state a claim upon which relief can be
> granted, the court must consider only those facts alleged in the
> complaint and accept all of the allegations as true. . . .  When
> reviewing a complaint, a court should consider not only the
> allegations contained in the complaint itself but also the
> exhibits attached to it which the complaint incorporates
> pursuant to Federal Rule of Civil Procedure 10(c).[8]

>> n.8. Where there is a disparity between a written
>> instrument annexed to a pleading and an
>> allegation in the pleading based thereon, the
>> written instrument will control.

ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 & n.8 (3d Cir. 1994); see generally Graue

Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago, 927 F.2d 988, 991

(7th Cir. 1991) ("[W]here the allegations of a pleading are inconsistent with the terms of

a written contract attached as an exhibit, the terms of the latter, fairly construed, must

prevail over the averments differing therefrom.") (quoting Foshee v. Daoust Construction

Co., 185 F.2d 23, 25 (7th Cir. 1950)).

A review of the documents relied upon by the debtor make clear that no

agreement to modify the loan was reached at the two conciliation conferences held.  The

November 2008 conference set forth the basic terms proposed by the judge pro tem,

which terms were conditionally dependent upon a future appraisal, and with the express

understanding that a further conference was to be held in December 2008.  Debtor's

Response to Motion to Dismiss, ex. B.  At the conclusion of the December 2008

conference, the state court judge marked a form order.  The court did not check the box

stating that "The underlying action is settled.  The Sheriff Sale is cancelled."  Id., ex. C.

Instead, the court checked the box that stated:

> An Agreement was reached.  The Sheriff's Sale is postponed
> to 2/13/09 to enable the parties to finalize the Agreement.  If

23

> no Agreement is reached by the above date, the Sheriff shall
> sell the premises unless otherwise ordered by the Court or by
> the Plaintiff.

Id.  Therefore, the court was acknowledging that the loan modification agreement had not

been completed ("finalized"), and set a deadline for the completion of such an agreement.

Furthermore, the debtor's payment of $3,000 in furtherance of her

modification request did not create a binding contract, as Emigrant expressly accepted the

funds without committing to any proposal.  As it stated in a December 16, 2008 letter

from its attorney to Ms. Angulo in acknowledging her payment of $3,000:

> Acceptance of payment does not constitute a waiver of
> Emigrant's right to proceed with sheriff's sale of the subject
> property, nor does it constitute an acceptance of any
> forbearance proposal.  So that Emigrant may evaluate your
> proposal and finalize a payment agreement, please complete
> and return the attached financial forms as soon as possible.

Id., ex. D.

Accordingly, the debtor's complaint and the exhibits thereto establish

negotiations toward a modification of her mortgage agreement, but not the creation of a

binding contract establishing such a modification.  Thus, Count IV fails to state a cause of

action and so will be dismissed.[13]

---

[13]In so doing, I do not reach the defendants' alternative argument that the state
court has already concluded that no binding modification agreement was reached, and that its
conclusion is binding in this adversary proceeding.  Nor need I consider other legal issues under
Pennsylvania law implicated by Count IV.

E.


As Count V has been withdrawn, the remaining claim in this proceeding is Count VI, wherein the debtor objects to Retained Realty's secured proof of claim as including improper interest, costs and attorneys' fees components, and as failing to properly credit the debtor's $3,000 payment to Emigrant. Defendant Retained Realty asserts that all of these disputed charges are permitted by the loan documents and that its attorney's fees are reasonable in light of "protracted" state court litigation. Motion to Dismiss, ¶¶ 53-54.

In connection with this motion, both parties agree that the mortgagee is entitled to prepetition attorney's fees but that such fees must be reasonable. As defendants' counsel acknowledged at oral argument, the reasonableness of the attorney's fees demanded in Retained Realty's proof of claim cannot be determined in the context of a motion to dismiss. Application of a lodestar analysis, see generally In re Gordon-Brown,

340 B.R. 751 (Bankr. E.D. Pa. 2006); In re McMillan, 182 B.R. 11, 14-15 (Bankr. E.D. Pa. 1995); Union Banking and Trust Co. of DuBois v. Johnston, 28 Pa. D. & C.3d 243, 253 (C.P., Clearfield Co. 1983); First Mortgage Co. of Pennsylvania v. Carbone, 3 Pa. D. & C.3d 517, 524 (C.P. Pike Co. 1977), would involve consideration of facts not derived from the complaint itself. See also In re Smith, 76 B.R. 426, 432 (Bankr. E.D. Pa. 1987).

If the debtor's factual allegations in her complaint are proven, Retained Realty's allowed secured claim will be less than that asserted. Thus, its motion to dismiss Count VI must be denied.

25

An appropriate order shall be entered.


_____
BRUCE FOX
United States Bankruptcy Judge


Dated: April 23, 2010